UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RONALD L. ROSE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:23-cv-01415-JRS-MJD |
| ) | |
| WENDY KNIGHT, et al., ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING IN PART AND DENYING PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Ronald Rose, who is incarcerated by the Indiana Department of Correction ("IDOC"), alleges in this lawsuit that Defendants Wendy Knight, Andrew Cole, John Poer, Steve Hall, and Robert Stafford failed to protect him from assault by other inmates in violation of his Eighth Amendment rights. The defendants have moved for summary judgment but have withdrawn that motion as to defendants Poer and Hall. For the reasons below, the motion for summary judgment is **GRANTED** to all defendants as to claims of assault in early 2021 and **GRANTED** as to the claims against defendants Knight, Cole, and Stafford arising after January 2021. Because defendants Hall and Poer have withdrawn their motion for summary judgment, the motion is **DENIED** as to the claims against them after January of 2021.

**I.
Standard of Review**

A motion for summary judgment asks the Court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). When reviewing a motion for summary judgment,

1

the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572–73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). A court only has to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it need not "scour the record" for evidence that might be relevant. *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 573−74 (7th Cir. 2017) (cleaned up).

A party seeking summary judgment must inform the district court of the basis for its motion and identify the record evidence it contends demonstrates the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).

Whether a party asserts that a fact is undisputed or genuinely disputed, the party must support the asserted fact by citing to particular parts of the record, including depositions, documents, or affidavits. Fed. R. Civ. P. 56(c)(1)(A). Failure to properly support a fact in opposition to a movant's factual assertion can result in the movant's fact being considered undisputed, and potentially in the grant of summary judgment. Fed. R. Civ. P. 56(e).

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Khungar*, 985 F.3d at 572–73.

### A. The Parties

From early January 2021 until January 5, 2024, Mr. Rose was incarcerated at the Correctional Industrial Facility ("CIF"). Dkt. 127-2 at 26 (Rose Dep.).[1]

Wendy Knight served as CIF's Warden until her medical leave beginning June 22, 2023, lasting until her official retirement on December 31, 2023. Dkt. 127-5 at 13 (Knight Interrogatories).

Andrew Cole served as Deputy Warden at CIF. Dkt. 127-2 at 33.

John Poer serves as an Investigator and Correctional Police Officer at CIF and is the head supervisory official over CIF's Office of Investigation and Intelligence ("OII"). Dkt. 127-1 at ¶ 1-3 (Poer Dec.). He is experienced in Security Threat Group ("STG") investigations, monitoring, and intelligence gathering within IDOC facilities, including primarily CIF. *Id.* ¶ 4.

Steve Hall is an Investigator and the STG Coordinator in OII at CIF. Dkt. 127-3 (Hall Dep.) at 9-10. Mr. Hall is experienced in STG investigations and intelligence gathering at CIF. *Id.* at 7, 54.

Robert Stafford served as the Grievance Specialist at CIF at all relevant times. Dkt. 127-2 at 31. Mr. Rose does not remember a time when Mr. Stafford did not respond to his grievances. *Id.* at 33.[2]

### B. Threats and Assaults to Mr. Rose

In January 2021, shortly after Mr. Rose arrived at CIF, four members of the Aryan Brotherhood entered his cell and assaulted him. They told him the beatings would continue to

---

[1] References to pages in Mr. Rose's and the defendants' depositions are to the pdf page in the ECF filing rather than the page number on the deposition transcript.
[2] The defendants point the Court to 291 pages of grievance records to support the proposition that Mr. Stafford did not fail to investigate or respond to Mr. Rose's grievances. *See* dkt. 127-19. Mr. Rose objects to this citation arguing that it runs afoul of the requirement that a party point to specific portions of the record. Nonetheless, there is no evidence that Mr. Stafford failed to investigate Mr. Rose's grievances.

happen if he did not pay them $50 every two weeks. Dkt. 127-2 at 40; dkt. 127-9 at 1 (Plaintiff's Supp. Interrogatories). No staff witnessed this altercation, but Mr. Rose reported the incident and extortion to Mr. Hall. Dkt. 127-9 at 11; dkt. 127-2 at 42. Mr. Rose claims that his shoulder was hurt, but he did not go to medical and he did not request protective custody. Dkt. 127-2 at 43. Mr. Hall does not specifically recall how he responded to or investigated Mr. Rose's report of the incident. Dkt. 127-8 at 6 (Hall Second Interrogatories).

From January 2021 through November 2021, Mr. Rose's mother, Susan Roysden paid the $50 biweekly payments to cover the extortion by sending the money to Mr. Rose's commissary account, and then Mr. Rose would make the payments. Dkt. 127-2 at 43. On August 2, 2021, Rose sent a tablet message to his mother via his step-father's account, Yatzie Roysden, stating:

> Me and the Aryan President and Rebel Cause Enforcer had a sit down this evening around 9:30 pm. I let them know I'll stand toe to toe with BOTH of their bests, and my buddy who is in here and is a high ranking Aryan said absolutely NOT, and that Roach (Nathan Strickland) is 100% in the wrong and being on some unrighteous shit ... Then I said Fuck you to them, because I REFUSED to join the Aryan Brotherhood.

Dkt. 127-12 at 2; *see also* Dkt. 127-2 at 46.

From November 2021 until March 2022, Mr. Rose was enrolled in the PLUS program at CIF and lived in the program dorm. Dkt. 127-2 at 47. In March 2022, Mr. Rose was removed from the PLUS program because of a conduct violation. Dkt. 127-2 at 49. After his removal from the program, an Aryan Brotherhood member entered Mr. Rose's cell and assaulted him while another Aryan Brotherhood member kept watch from the doorway. *Id.* at 52. They demanded a $400 payment to the Aryan Brotherhood to make up for payments not made while Mr. Rose was housed in the PLUS Program dorm, Dkt. 127-2 at 52-53. Mr. Rose reported this incident to Mr. Hall but he did not see medical or ask for a request for protection form, because, after requesting protective

4

custody, Mr. Hall told him that CIF does not have a protective custody unit. Dkt. 127-2 at 54-55; dkt. 127-9 at 2.

On May 18, 2022, two Aryan Brotherhood members punched, kicked, choked, and threatened to kill Mr. Rose. Dkt. 127-2 at 55-57. One of them also hit Mr. Rose with a sack full of cans. *Id.* The next day, custody staff found Mr. Rose with red marks and a bruise on his face. Dkt. 127-1 ¶ 33. Mr. Rose was taken to medical where a photo of his face, showing redness and bruising, was taken. Dkt. 127-1 ¶ 34. Mr. Rose was offered and refused protective custody, signing a waiver of protection form. Dkt. 127-2 at 58. He initially told Mr. Hall that he had fallen while trying to move his bunk. *Id*. However, as Mr. Hall acknowledged, inmates will often explain away their injuries as accidents, even if they are legitimately assaulted, "because they don't want retaliation from other offenders. They don't want to have their time messed up. They don't want to go to segregation. There's [sic] several reasons." Dkt. 127-3 at 26-27. Mr. Rose waived protective custody because the Aryan Brotherhood members told Mr. Rose that they would kill him if he "snitched." Dkt. 127-2 at 58-59.

A few days later, another member of the Aryan Brotherhood came to Mr. Rose's cell to inform Mr. Rose that he was still required to pay the $50 biweekly extortion payments to the gang. He hit Mr. Rose in the face and told him he would "never talk again" if Mr. Rose informed anyone about the incident. Dkt. 127-2 at 63; dkt. 127-9 at 2. No staff witnessed this incident and Mr. Rose did not seek medical attention, but he reported the incident and its details to Mr. Hall. Dkt. 127-2 at 63, 64; dkt. 127-9 at 2.

In July 2022, two members of the Aryan Brotherhood came to Mr. Rose's cell and physically attacked him. Dkt. 127-2 at 64; dkt. 127-9 at 2. Also in July 2022, in a separate incident, another Aryan Brotherhood member returned to Mr. Rose's cell and proceeded to attack and rob

him and threaten his life. Dkt. 127-2 at 64; dkt. 127-9 at 2. Mr. Rose informed Mr. Hall what happened. Dkt. 127-2 at 65-66, 68; dkt. 127-9 at 2.

At some point, Mr. Rose wrote a letter to Warden Knight. In that letter, Mr. Rose explained how he had been attacked, who the perpetrators were, and why they were targeting him. Dkt. 127-2 at 104-105.

At some point, Mr. Rose had returned to the PLUS program, dkt. 127-2 at 70, but, on April 14, 2023, medical ordered his removal from the PLUS program housing unit because the dorm housed cats and dogs and he suffered from allergies. Dkt. 127-2 at 75; 76; dkt. 127-14. Later that month, two Aryan Brotherhood members assaulted Mr. Rose in his cell and told him that he needed to "pay rent" (*i.e.*, comply with the extortion scheme) or he would be harmed again. Dkt. 127-2 at 69-71; dkt. 127-9 at 2. Mr. Rose reported the incident to Mr. Hall. *Id.* He did not seek medical assistance and no staff witnessed the assault. Dkt. 127-2 at 73; Dkt. 127-9 at 2. On April 17, Mr. Rose's mother called and reported to Mr. Poer that Mr. Rose wanted to be moved back to the PLUS program unit because the Aryans were threatening and extorting him. Dkt. 127-15. Mr. Poer had custody staff perform a welfare check on Mr. Rose and noted that Mr. Rose had been trying to provide intel to OII to get help with his conduct charge. *Id.*

On May 20, 2023, an Aryan Brotherhood member returned to Mr. Rose's cell and punched, choked, and slammed him against a wall. He demanded that Mr. Rose pay a $500 drug debt which he owed to a member of another gang, the Latin Kings, or else he would kill Mr. Rose. Dkt. 127-2 at 77-78; Dkt. 127-9 at 3. Mr. Rose did not get medical attention and no staff witnessed this incident. Dkt. 127-2 at; dkt. 127-9 at 3. Mr. Rose again reported the incident to Mr. Hall, but no action was taken. Dkt. 127-2 at 78.

6

On May 25, 2023, two members of the Latin Kings came to Mr. Rose's cell and attempted to stab him with a homemade ice pick. *Id.* at 78-79; dkt. 127-9 at 3. Those gang members then held a razor blade to Mr. Rose's throat while they stole items from his cell. Dkt. 127-2 at 78-79; dkt. 127-9 at 3. Immediately afterwards, an Aryan Brotherhood member returned to Mr. Rose's cell, choked him, and told him that he was lucky that he hadn't been hurt worse. Dkt. 127-2 at 78-79; dkt. 127-9 at 3. A photograph was taken of Mr. Rose's face on May 26, 2023. Dkt. 127-16. After this incident, there was no "actual investigation done, but video was looked at." Dkt. 127-3 at 38. In the video, Mr. Hall could "see people coming from [Mr. Rose's] cell carrying items." *Id.*

After this incident, Mr. Poer received a call from Mr. Rose via OII's tip line regarding this incident. Dkt. 127-1 ¶ 36. Mr. Rose was called out by OII and seen by medical. *Id.* ¶ 37; dkt. 127-2 at 82. Mr. Rose requested and was granted protective custody. This meant he was transferred to the Restrictive Housing Unit ("RHU") (also known as segregation). Dkt. 127-2 at 85. Mr. Rose stayed in the RHU until his transfer to New Castle Correctional Facility on May 26, 2023. Dkt. 127-1 ¶ 43.

On May 29, 2023, Mr. Rose wrote a second letter to Warden Knight, and others, reiterating who had been targeting him and why, and requesting her assistance, but he did not receive a response. Dkt. 50 at 25. Mr. Rose sent a third letter containing the same information to Warden Knight and other IDOC officials on July 31, 2023. *Id.* at 27.

### C. Investigations and Protective Custody

Investigations into Mr. Rose's allegations were delegated to OII. Dkt. 127-5 at 7 (Knight Interrogatories). Investigations include review of incident reporting by custody staff, listening to inmate phone calls, reviewing inmate's tablet messages, conducting interviews, reviewing video surveillance, and analyzing financial transactions. *Id.* ¶ 20. There is no rigid formula. Dkt. 127-1

7

¶ 17. OII also maintains a TIPS (Timely Information Promotes Safety) line that allows inmates to report criminal activity on a confidential basis. *Id.* ¶ 8. OII conducted cashapp investigations, review of financial transaction histories, communications with Mr. Rose's mother, who Mr. Rose stated was paying the extortion. *Id.* p 27.

### III.
### Discussion

The defendants argue that Mr. Rose's claims about the assault in January of 2021 are barred by the statute of limitations, that defendants Knight and Cole were not personally involved in the actions at issue, and that defendant Stafford was not deliberately indifferent to the risk to Mr. Rose. Defendants Poer and Hall have withdrawn their request for summary judgment.

**A. Statute of Limitations**

First, the defendants argue that Mr. Rose's claims regarding assault that took place in January of 2021 are barred by the statute of limitations. For claims asserted under Section 1983, courts apply "the limitations period and tolling rules applicable to personal-injury claims under state law." *Devbrow v. Kalu*, 705 F.3d 765, 767 (7th Cir. 2013). The applicable Indiana statute of limitations is two years. Ind. Code § 34-11-2-4(a). The defendants argue that because Mr. Rose alleges that he was assaulted in January of 2021, but did not file this lawsuit until August of 2023, these claims are barred by the statute of limitations. Mr. Rose argues that claims based on the January 2021 assault should not be time-barred based on the continuing wrong doctrine. Under that doctrine, when a wrong is ongoing rather than discrete, the period of limitations does not commence until the wrong ends. *Manuel v. City of Joliet, Illinois*, 903 F.3d 667, 669 (7th Cir. 2018). A violation is continuing where "it would be unreasonable to require or even permit [a prisoner] to sue separately over every incident of the defendant's unlawful conduct." *Turley v.*

*Rednour*, 729 F.3d 645, 651 (7th Cir. 2013). Here, Mr. Rose alleges he was assaulted in January of 2021 and then not again until March of 2022. There is not enough of a connection between the January 2021 assault and the March 2022 assault to show that these incidents at least were not discreet and instead he was subjected to an ongoing wrong such that claims based on his 2021 assault would be timely. The defendants are therefore entitled to summary judgment in this respect.[3]

### B. Wendy Knight and Andrew Cole

Wendy Knight and Andrew Cole both argue that they were not personally involved in the alleged failure to protect Mr. Rose from assault. "[I]ndividual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted). "The plaintiff must demonstrate a causal connection between (1) the sued officials and (2) the alleged misconduct." *Id.* For a public official to be individually liable for a subordinate's constitutional violation, the official must both "(1) know about the conduct and (2) facilitate, approve, condone, or turn a blind eye toward it." *Gonzalez v. McHenry County, Ill.*, 40 F.4th 824, 828 (7th Cir. 2022).

### 1. Wendy Knight

Wendy Knight was the Warden at CIF until her medical leave in June 2023. Dkt. 127-5 at 13. During the time she was the Warden, investigatory duties at CIF were delegated to OII. *Id.* at 2-3. Warden Knight was generally aware that OII was investigating Mr. Rose's allegations "and that appropriate prison staff were looking into and addressing Rose's claims." Dkt. 127-4 at 8. But Warden Knight was neither personally involved in the investigation of Mr. Rose's allegations nor

---

[3] The Court expresses no opinion, however, as to whether Mr. Rose's complaints about the alleged January 2021 assault may otherwise be relevant to his later failure-to-protect claims.

aware of any substantiated assault allegations. Dkt. 127-5 at 8-14. Any letters sent to her concerning alleged safety or security matters would have been forwarded to OII. *Id.* at 3.

Mr. Rose compares his claims to those in *Haywood v. Hathaway*, 842 F.3d 1026, 1032–33 (7th Cir. 2016), where the Seventh Circuit held that a Warden could be held liable for the harm caused by cold prison conditions because there was evidence that he "had actual knowledge of the unusually harsh weather conditions, that he had been apprised of the specific problem with the physical condition of [the plaintiff's] cell (i.e., the windows would not shut), and that, during the time period of [the plaintiff's] complaint, the warden toured the segregation unit himself"). Here, however, Mr. Rose has not designated evidence to allow a jury to conclude that Warden Knight had direct involvement in Mr. Rose's allegations. Mr. Rose's evidence that he sent Warden Knight letters regarding the alleged assaults is not enough. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("[The plaintiff's] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor . . . and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right."). Warden Knight is therefore entitled to summary judgment.

### 2. Andrew Cole

Andrew Cole served as Deputy Warden at CIF at all relevant times. Dkt. 127-2 at 22. Like Warden Knight, Mr. Rose seeks to hold Deputy Warden Cole liable because Mr. Rose sent letters to Deputy Warden Cole, but did not receive responses. *Id.* at 33. But, like Warden Knight, this is not enough to show that Deputy Warden Cole was personally involved in the alleged violations of

10

Mr. Rose's rights. Because there is no evidence of his personal involvement in the review or investigation of Mr. Rose's claims, Deputy Warden Cole is entitled to summary judgment.

### B. Robert Stafford

Robert Stafford served as CIF's Grievance Specialist during the time at issue in Mr. Rose's complaint. Dkt. 127-2 at 31. Mr. Stafford argues that he is entitled to summary judgment because there is no evidence that he failed to perform his duties as a grievance officer. Officers responding to grievances do not violate the Eighth Amendment simply by carrying out their jobs. *Hill v. Nicholson*, 829 F. App'x 141, 143 (7th Cir. 2020). Here, as a grievance specialist, Mr. Stafford would receive grievances and forward them to appropriate staff for a response. Dkt. 127-2 at 32. Mr. Rose does not recall any time when Mr. Stafford ignored or did not respond to one of Mr. Rose's grievances. *Id.* at 33. Because Mr. Stafford acknowledged Rose's grievances and facilitated responses from appropriate officials, no reasonable jury could conclude that he was deliberately indifferent to the risk to him. *See Stankowski v. Carr*, No. 23-2458, 2024 WL 548035, at *2 (7th Cir. Feb. 12, 2024) ("an official who merely review a grievance appeal cannot be liable for the conduct forming the basis of the grievance"). Mr. Stafford is therefore entitled to summary judgment.

### IV.
### Conclusion

The defendants' motion for summary judgment, dkt. [127], is **GRANTED IN PART AND DENIED IN PART**. The motion is **granted** as to all claims against all defendants for alleged assaults in January of 2021 and **granted** as to all claims against defendants Wendy Knight, Andrew Cole, and Robert Stafford. Because defendants Steve Hall and John Poer agree that there are issues of material fact regarding the claims against them after January of 2021, the motion is **DENIED** as to those claims that took place after January of 2021.

11

The **clerk shall terminate** defendants Wendy Knight, Andrew Cole, and Robert Stafford on the docket.

Date: 9/29/2025

_____
JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

RONALD L. ROSE
213041
NEW CASTLE - CF
NEW CASTLE CORRECTIONAL FACILITY - Inmate Mail/Parcels
1000 Van Nuys Road
P.O. Box E
NEW CASTLE, IN 47362

All Electronically Registered Counsel